## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**KELLYTOY WORLDWIDE, INC.,**

**Plaintiff,**

**vs.**

**JAY AT PLAY INTERNATIONAL HONG KONG LIMITED d/b/a/ Jay At Play, JAY FRANCO & SONS, INC., and DOES 1- 10**

**Defendants.**

Case No.

## COMPLAINT

Plaintiff KELLYTOY WORLDWIDE, INC., a California corporation ("Kellytoy") brings this action against defendant JAY AT PLAY INTERNATIONAL HONG KONG LIMITED d/b/a/ Jay At Play, a Hong Kong private limited company ("Jay At Play"), JAY FRANCO & SONS, INC., a New York Corporation ("Jay Franco") (Jay at Play and Jay Franco are referred to below collectively as "Jay at Play") and DOES 1 through 10 (collectively, "Defendants") for injunctive relief and damages under the laws of the United States and the State of New York, as follows:

## JURISDICTION AND VENUE

1.      This action arises under the trademark laws of the United States, 15 U.S.C. §§ 1114, 1125(a) and (d), under the statutory and common law of trademark/trade dress infringement and unfair competition.

2.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1338, and 1367, and 15 U.S.C. §§ 1114, 1116, 1117, 1121, and 1125.

3.      Venue lies in this judicial district pursuant to 28 U.S.C. § 1391 and 1400(a).

4.      This Court has personal jurisdiction over Defendants, as Defendants are doing business in New York and this District and are subject to the jurisdiction of this Court.

5.      Defendant Jay Franco is a corporation organized under the laws of the state of New York with a principal place of business in this judicial district, at 295 Fifth Avenue, Suite 312, New York, New York 10016.

6.      Defendant Jay At Play actively distributes plush toys to customers throughout the state of New York and this District, including the Infringing Plush (as defined below) at least to Wal-Mart, Inc.  In addition, on information and belief, defendant Jay At Play maintains and/or has historically maintained a place of business in New York and this District and is owned and/or controlled by defendant Jay Franco.

## NATURE OF THE ACTION

7.      This action, as alleged below, arises specifically because defendant Jay at Play has embarked on a transparent campaign to hijack Kellytoy's longstanding and well-earned goodwill in the plush toy marketplace by infringing on Kellytoy's registered trademark and distinctive trade dress.  Jay at Play, in its haste to sow customer confusion and consequently draw business from Kellytoy, has employed a name, Mushmillows, that is a virtual and linguistic replica of Kellytoy's registered Squishmallows® trademark.  Indeed, the Jay at Play mark sounds the same, looks the same, means essentially the same thing, and is used for the same type of niche goods as Kellytoy's established mark.  That duplication is plainly deliberate – Jay at Play is attempting to confuse customers into believing, falsely, that its goods are associated with and derive from the same source of origin as Kellytoy's products.  Beyond all that, Jay at Play is

selling its competing goods (bearing the infringing Mushmillows mark) in the same retail outlets as Kellytoy's products, all but assuring the intended and expected customer confusion.

8.      Accordingly, Kellytoy has no alternative but to take steps to preserve and protect its intellectual property from this naked attack, and it thus has filed this action for trademark infringement, trade dress infringement, unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), various New York unfair competition laws, and the common law; and for cyber-piracy under the Lanham Act, 15 U.S.C. § 1125(d).

9.      The intellectual property Kellytoy is protecting by way of these counts is a linchpin of the plush toy industry.  SQUISHMALLOW® branded plush toys, also branded and referred to as SQUISHMALLOWS ("Squishmallows") – representative samples of which are depicted in **Exhibit 1** hereto – are in fact one of the world's hottest plush toy lines and they are marketed and sold under multiple platforms.

10.      In addition to the registered trademark, for example, Kellytoy's Squishmallows feature a highly distinctive and widely recognized designs and trade dress, which Kellytoy pioneered and created.  Kellytoy also actively markets its Squishmallows through numerous media outlets, including, without limitation, on social media, at tradeshows, through Squishmallows.com, amazon.com, walmart.com, walgreens.com and target.com, and on Kellytoy's website and social media accounts, depicting images of its proprietary Squishmallows line of plush toys.

11.      Defendants are merely the latest, though most brazen, of the intellectual property pirates seeking to conscript Kellytoy's goodwill for competitive purposes.  The explosion in popularity of Kellytoy's SQUISHMALLOW® branded plush toys and the resulting widespread customer and industry recognition has, unfortunately, led to illegal imitation by

Kellytoy's competitors, including Defendants.  Kellytoy has specifically discovered that defendant

Jay At Play has been manufacturing, offering for sale, and selling to customers, including, on

information and belief, Wal-Mart (which  have re-sold), plush toys that co-opt Kellytoy's

Squishmallows' original features and designs – in connection with the designation

MUSHMILLOWS – a trademark that infringes Kellytoy's registered SQUISHMALLOWS

trademark.

12.     Thus, and to prevent and remediate the widespread consumer confusion that has

occurred and will occur in the future from Defendants' infringement of the SQUISHMALLOWS

trademark, and unauthorized use, promotion and sale of the Infringing Plush (defined below),

and to compensate Kellytoy for its injuries, Kellytoy seeks: (1) immediate and permanent

injunctive relief; (2) compensatory damages; (3) disgorgement of Defendants' profits; (4)

statutory damages; (5) punitive damages; (6) Kellytoy's reasonable attorneys' fees and expenses;

(7) a product recall; and (8) and corrective advertising sufficient to address Defendants'

wrongdoing and its resulting damage to Kellytoy.  No other result can redress the audacious

infringement alleged below, and that Kellytoy will prove at trial.


## **THE PARTIES**

13.     Kellytoy Worldwide, Inc. is a California corporation with its principal place of

business located in Los Angeles, California.

14.     Kellytoy is in the business of developing, manufacturing and selling children's

toys including, among other things, plush toys.

15. On information and belief, defendant Jay at Play is a Hong Kong private limited company, and is a division or subsidiary of Jay Franco, under the control of Jay Franco, with a principal place of business at 295 Fifth Avenue, Suite 312, New York, New York 10016.

16. On information and belief, defendant Jay Franco is a corporation organized under the laws of the state of New York with a principal place of business at 295 Fifth Avenue, Suite 312, New York, New York 10016.

17. Jay At Play is in the business of manufacturing and selling children's toys, including plush toys.

18. The true names and capacities of defendants sued herein as DOES 1-10, inclusive, are unknown to Kellytoy, who therefore sues said defendants by such fictitious names. Kellytoy will amend this Complaint to allege their true names and capacities when the same are ascertained.

19. Upon information and belief, at all relevant times mentioned in this Complaint, Defendants, and each of them, were acting in concert and active participation with each other in committing the wrongful acts alleged herein, and were the agents of each other and were acting within the scope and authority of that agency and with the knowledge, consent and permission of one another.

## **BACKGROUND FACTS**

### **Kellytoy and Its Protected Intellectual Property Rights**

20. Kellytoy is an innovative and highly successful creator, manufacturer, distributor and seller of unique plush toys, including, without limitation, its Squishmallows line of plush under the SQUISHMALLOW® and SQUISHMALLOWS brands. (*See, e.g.,* **Exhibit 1**.)

21.     Kellytoy has been in business for nearly two decades and in that time has developed a reputation for producing high quality, unique, and creative plush toys that are highly prized in the industry and in widespread demand by the consuming public.

22.     Kellytoy devotes extensive time and resources promoting and preserving its image and identity and the image and identity of its high quality plush toys.  That includes, without limitation, creating distinctive designs and marks for use on its products, and taking all steps necessary to preserve and protect its intellectual property.

23.     In particular, Kellytoy is the sole and exclusive owner of United States Federal Trademark Registration No. 5454574 for the trademark SQUISHMALLOW for plush toys, also commonly referred to as "Squishmallows" (collectively, the "SQUISHMALLOWS Mark").  A true and correct copy of United States Certificate of Registration No. 5454574 for the SQUISHMALLOW trademark is attached as **Exhibit 2**.

24.     Kellytoy has been and is the sole owner of all right, title and interest in and to the SQUISHMALLOWS Mark (occasionally referred to as the "Mark").

25.     In 2016, Kellytoy conceived of and began creating its Squishmallows line of plush toy designs – ultimately marketed in connection with the inherently distinctive SQUISHMALLOWS Mark – that shares common, unique features distinguishing them from the goods of others.  In essence, Kellytoy created an entirely new class of plush toys that has carved a previously non-existent niche in the marketplace.  And that newly created niche has, in turn, spawned a cultural craze in which numerous imitators have emerged, including Defendants.

26.     In that regard, however, Kellytoy has been and is the sole owner of all right, title and interest in and to the Squishmallows line that possesses unique, recognizable and distinguishing features that are common across much of the Squishmallows line.  From 2016 to

the present, Kellytoy has expended large sums of money in developing, advertising and promoting the Mark, and the product designs bearing it, through the United States.  In fact, Kellytoy is spending over $1,000,000 annually in direct to consumer and business-to-business advertising in connection with its SQUISHMALLOWS Mark and branded goods.

27.    Due to Kellytoy's distinctive Mark, coupled with its unique designs, extensive marketing efforts, media coverage, and market penetration, the SQUISHMALLOWS Trademark has further acquired distinctiveness in the marketplace when applied to plush toys.  In fact, because of Kellytoy's extensive promotional activities and widespread display of the Mark directed to the public, and a consequence of Kellytoy's well-earned reputation for fairness and integrity in dealings with its customers, the relevant consuming public has come to recognize and associate plush toys bearing the SQUISHMALLOWS mark as high quality goods connected with or offered by Kellytoy.  The Mark has, as a result, valuable goodwill and consumer recognition associated with it and has come to symbolize the exemplary reputation of Kellytoy.

28.    Consistent with that advertising and marketing scope, Kellytoy sells a broad range of SQUISHMALLOW branded plush toys featuring the brand's iconic trade dress, and whose overall look, feel and image – and in particular but without limitation its shapes, colors, textures and graphics – serve as a distinctive source identifier to the consuming public.  Though not easily reduced to writing, these features include: (1) substantially egg/bell shaped plush toys depicting various similarly shaped fanciful renditions of animals/characters; (2) simplified Asian style Kawaii faces with repeating and complementary rounded/oval shaped graphics depicting features on the characters themselves (such as eyes, snouts and bellies) and which conform to and support the overall egg/bell shape of the toys; (3) embroidered facial features, such as eyes, nostrils, and/or mouths; (4) distinctive contrasting and non-monochrome coloring; and (5) short-pile

velvety velour-like textured exterior with a light and silky memory foam-like stuffing providing an extremely soft and squeezable marshmallow feel.  These features, and the resulting overall look and feel of the toys bearing them, are more fully depicted, without limitation, in **Exhibit 1** hereto (collectively, together with **Exhibit 1**, the "Squishmallows Trade Dress").

29.    Kellytoy has, beginning in 2016 and continuing without interruption, expended a great deal of time, effort, and money in the promotion of its Squishmallows line.  And due to Kellytoy's distinctive designs, robust marketing efforts, media coverage, and market penetration, the Squishmallows Trade Dress has acquired distinctiveness in the marketplace when applied to plush toys.  As a further result of Kellytoy's extensive promotional activities and widespread display of its Squishmallows directed to the public and as a result of the fairness and integrity mentioned above, the relevant consuming public has come to recognize and associate plush toys bearing the Squishmallows Trade Dress as high quality goods connected with or offered by a single source, Kellytoy.  The Squishmallows Trade Dress thus embodies valuable goodwill and consumer recognition associated with it and has come to symbolize the valuable goodwill and reputation of Kellytoy.

30.    Beyond merely being original and inherently distinctive, the Squishmallows Trade Dress is also widely recognized by consumers.  A simple Internet search using the Google search engine yields, for example, about 1,200,000 "hits" for the search term "Squishmallows."

31.    The scope of Kellytoy's sales reflects the market penetration of its intellectual property.  The company markets and sells Squishmallows not only through thousands of retail stores nationwide, but additionally on its website <squishmallows.com> featuring dozens of protected photographs of its plush toys and models holding its Squishmallows.  Copies of the homepage and other representative pages from <squishmallows.com> are attached as **Exhibit 3**.

32.     Kellytoy's Squishmallow website traffic has, not surprisingly, grown exponentially since its launch in 2017, and has now reached an average in excess of 5,500 visits per day.

33.     Kellytoy also actively engages in promoting its line of Squishmallows branded plush toys through its numerous social media accounts, including on Instagram, Facebook, and Twitter.  Indeed, Kellytoy's legion of loyal fans of its line of Squishmallows branded plush toys have been extremely engaged on social media, including Facebook and Instagram, demonstrating their awareness and affection for Kellytoy's Squishmallows.  For example, the average Squishmallows post likes on Instagram, for example, hovering over 2000+ per post and 45-100 average comments per post.  In fact, Kellytoy's Squishmallows branded plush toys have garnered over 200 Million media impressions.

34.     Further adding to their recognition and secondary meaning in the marketplace, Squishmallows have been featured in over 300 publications, including magazines, press articles, reviews, and videos, as set forth in greater detail in **Exhibit 4** hereto, including many mainstream media publications such as the *Washington Post*, the *Chicago Tribune*, the *Daily Harold*, O*kay! Magazine*, among others.  By way of example only, Squishmallows have been also recognized by: (1) The *Washington Post* and *Consumer Reports* on their 2017 Holiday Gift Guides; (2) *LA Parent* in its October 2017 issue, under the "Products We Love" section, which specifically identified Squishmallows; and (3) *OK!* Magazine in its August 21, 2017 issue, which, as depicted below, featured Squishmallows and described them in flattering terms, stating, "Cuddly as they are cute, they make great couch pals, pillows and bedtime buddies in any home.  Collect the whole squad!  squishmallows.com."

35.     There are myriad further examples of the popularity and market penetration of the Squishmallows line.  To name just a few, Squishmallows were featured in the October 2017 issues of *L.A. Parent Magazine*, *City Parent Magazine*, and *San Diego Family Magazine* and included in the 2017 gift guides for various publications, including in *The Washington Post*, *The Houston Chronicle*, and *L.A. Parent*.

36.     In fact, Kellytoy's Squishmallows sold out through Walgreens.com during their Gift of the Week promotion in early November 2017, as well as exceeding all sales goals for the campaign, both online and in stores.

37.     Reflecting the quality of the goods, Kellytoy's Squishmallows have also received numerous industry awards and product recommendation lists, including by the National Parenting Product Awards, Parents' Choice, and TTPM, as more fully set out in **Exhibit 4**.  Thus, for example, Kellytoy's Squishmallows were named by *Toy Insider* as one of the "Top Holiday Toys," made the cover the September/October 2017 *Toy Book Magazine*, and have been featured in

numerous other trade magazines, such as, *Teddy Bear and Friends Magazine* and *Animal Tales Magazine*.

38.    The popular blog *Trendy Mom Reviews* listed Squishmallows as one of The Best Gifts for 2018!"  Similarly, the popular blog *Two Kids And A Coupon* did its own review of Kellytoy's Squishmallows branded plush, saying, among other things, that they are "a gift for anyone on our list this holiday!"

39.    Squishmallows branded toys were also:  (1) named one of "The Best New Toys" by Minnesota Parent Magazine! and was named a Great Holiday Gifts For Littles by Texas Lifestyle Magazine!; (2) selected as among the "5 Editor's Picks From Toy Fair" 2019 by *Gifts & Decorative Accessories*; (3) featured by *The Toy Insider* in connection with its March 13, 2019 article entitled "Tips for Tackling Testing & Student Stress"; (4) featured on the cover of *The Toy Book's* "Plush Issue" and its Toy Fair New York 2019 issue, in *The Toy Book's* August 5, 2019 issue (specifically featuring the upcoming Halloween Squishmallows line), and in *The Toy Book's* issue (specifically featuring the Squishmallows branded turtle) on May 15, 2019; (5) featured in *TFE Toys & Family Entertainment's* NYC Toy Fair 2019 issue; and (6) won the *Parent and Teacher Choice Award* for 2019 from HowtoLearn.com.

40.    This widespread publicity and recognition has occurred in conjunction with Kellytoy's advertising efforts concerning Squishmallows and the SQUISHMALLOWS Mark, which, as alleged above, have comprised consistent and robust marketing campaigns, including email campaigns, social media posts, and direct to consumer advertising.  Kellytoy's Squishmallows currently have nearly 100,000 Instagram followers, more than 77,000 Facebook followers – more than many longer-existing and well-known plush brands.  To its followers, Kellytoy regularly publishes photographs of its SQUISHMALLOWS Mark.  Many of these

followers, in turn, share these posts with their friends and social media followers.  A copy of Squishmallows Instagram page, bearing the Mark, is attached as **Exhibit 5**.

41.     In addition, hundreds of well-known YouTube influencers and vloggers have shared and posted images and videos of themselves holding plush toys in Kellytoy's line of Squishmallows products.  Tens of thousands of consumers have done the same through numerous media platforms, including, Facebook, Instagram, Pinterest and YouTube.  These posts have generated millions of "likes" and "shares" and all feature, among other things, the Mark.

42.     Kellytoy's Squishmallows and the Mark they bear are listed amongst the leading global brands and toys such as Hatchimals, Hasbro, RB, Hot Wheels, NERF, and Spin Master by several industry publications.

43.     As a direct result of Kellytoy's efforts at promoting and building its Mark and brand, Kellytoy's Squishmallows line has exploded in popularity, creating substantial demand for and interest in Squishmallows, and generating enormous goodwill in the SQUISHMALLOWS Mark and the Squishmallows Trade Dress in the United States and around the world.  In fact, Kellytoy's Squishmallows are sold through hundreds of retailers including some of the largest retailers in the country, including, approximately 1,000 Costco stores, 5,500 Wal-Mart stores, 8,500 Walgreens stores, 6,200 CVS stores, 4,000 Kroger supermarkets and Fred Meyer stores, 1,800 Target stores, 700 Justice stores, 900 Party City stores, amongst other outfits such as Dave & Busters, Knotts Berry Farms and numerous others.

44.     Since the summer of 2017, Kellytoy has shipped approximately a whopping 40 million (40,000,000) units of Squishmallows and there is no indication that sales will be slowing down anytime soon.  Kellytoy's Squishmallows products embodying the SQUISHMALLOWS

Mark and Trade Dress have yielded tens of millions of dollars of sales in the U.S. over the past year.

45.    Nor has the pace of sales of Kellytoy's SQUISHMALLOWS branded toys slowed.  To the contrary, sales of goods bearing the Mark have been steadily increasing and there is no indication of their popularity waning any time soon.  These goods have, in fact, become so popular among, sought after by, and recognizable as a brand by the public that some members of the public have been selling unauthorized merchandise, such as T-shirts and jewelry, bearing the images of some of Kellytoy's most popular SQUISHMALLOWS branded toys and all bearing the Mark.  Few plush lines can boast having third parties attempt to "merchandise" its designs and goods generally bearing its trademark – something typically reserved for Disney, Looney Tunes, and the like.  But while Kellytoy has since put a stop to these unauthorized uses, it has preserved exemplars of some such infringements by three different infringers, as depicted below:







46.     The immense popularity – indeed ubiquity – of Kellytoy's Squishmallows line of plush toys, including those set forth on **Exhibit 1**, has now reached the point where Kellytoy has recently embarked on a global initiative to license the SQUISHMALLOWS Mark and these designs to include diverse categories of merchandise, including apparel, sleepwear, accessories, headwear, home decor, health and beauty, back to school, stationery and paper goods, games and puzzles, novelty, publishing and magazines, food and beverage, and mobile gaming.  (*See*, *e.g.*, **Exhibit 6** hereto.)

47.     All of which is to reiterate that due to Squishmallows' massive success and popularity, consumers have come to associate Kellytoy's high-quality Squishmallows plush toys with the SQUISHMALLOWS Mark and the Squishmallows Trade Dress and, conversely, have come to recognize the SQUISHMALLOWS Mark and Squishmallows Trade Dress as designations of source.  But that success has come at a price – the popularity of SQUISHMALLOWS branded goods has attracted many imitators, such as Defendants, all of whom are attempting to benefit from Kellytoy's hard earned goodwill, and to do so illegally.  In fact, Kellytoy has pursued numerous third-party infringers who have co-opted the Squishmallows Trade Dress and succeeded in stemming such infringements.

### Defendants' Unlawful Conduct

48.     At the outset, none of the defendants to this action is licensed or otherwise authorized by Kellytoy to market or distribute products bearing or embodying Kellytoy's SQUISHMALLOWS Trademark or Squishmallows Trade Dress.

49.     In fact, Defendants deliberately and in bad faith manufactured and sold the Infringing Plush (defined below) to Wal-Mart, even after receiving a warning letter from

Kellytoy concerning its trademark rights in the SQUISHMALLOWS trademark approximately two months before the Infringing Plush hit the store shelves.

50.     Kellytoy is nonetheless informed and believes that sometime in 2019, and notably well after Kellytoy established its reputation in its SQUISHMALLOWS Mark and Squishmallows Trade Dress and after the Mark and Trade Dress acquired distinctiveness in the marketplace, Defendant Jay At Play began offering for sale and supplying various plush toys bearing a trademark and trade dress that were substantially and confusingly similar  to the SQUISHMALLOWS Mark and to Kellytoy's Squishmallows Trade Dress.

51.     And the plush toys marketed and sold by Jay At Play bearing the Jay at Play imposter trademark MUSHMILLOWS and bearing the Squishmallows Trade Dress (hereinafter collectively referred to as "Infringing Plush") – sold through retail stores throughout the United States including New York – bears such close similarity, in sight, sound, and meaning with the SQUISHMALLOWS Trademark and "look and feel" with the Squishmallows Trade that manifest customer confusion was plainly intended and is certain to occur.  Photographs of the Infringing Plush bearing Jay At Play's trademarks are collectively attached hereto as **Exhibit 7**.

52.     Kellytoy is specifically informed and believes, for example, that Defendants manufactured in, and imported from, China the Infringing Plush into the United States for the purpose of having the Infringing Plush enter interstate commerce and/or to be transported or used in interstate commerce through the same channels of trade through which Kellytoy sells its Squishmallows branded plush.  That includes Jay At Play selling the Infringing Plush to the popular big box retailer Wal-Mart – one of Kellytoy's premier customers – which has in turn sold and is currently selling the Infringing Plush in interstate commerce.

53.     Those sales are clearly intended to draw on the Squishmallows goodwill, and to compete unfairly and illegally for Kellytoy's customers through trademark confusion and predatory tactics.  Kellytoy is informed and believes, for example, that Jay At Play has agreed to sell the Infringing Plush to Wal-Mart at prices that are lower than the prices charged by Kellytoy for its authentic Squishmallows branded plush.  Kellytoy is further informed and believes that Jay At Play is able to undercut Kellytoy's sales prices because, rather than investing in creating its own designs and identity, Jay At Play has instead copied and infringed Kellytoy's proprietary SQUISHMALLOWS Mark and Squishmallows Trade Dress and otherwise because its Infringing Plush are of inferior quality as compared to Kellytoy's SQUISHMALLOW branded plush.

54.     In fact, Kellytoy has met with buyers from Wal-Mart on numerous occasions, and has been selling and continues to sell Kellytoy's authentic SQUISHMALLOWS branded plush to Wal-Mart.  Kellytoy is, in that regard, specifically informed and believes that sometime during 2019, Jay At Play offered to sell Wal-Mart copies of Kellytoy's Squishmallows at prices lower than Kellytoy sells its authentic Squishmallows branded toys bearing the Mark.

55.     Kellytoy is additionally informed and further believes that Defendants, without Kellytoy's consent or permission, sell, advertise, promote, display, and distribute the Infringing Plush in United States commerce and that Defendants' Infringing Plush are sold in the same channels of trade as Kellytoy's authentic Squishmallows branded plush toys.

56.     In late June 2019, Kellytoy learned that Jay At Play had a pending United States trademark application, based on intent to use, for MUSHMILLOWS.  On June 25, 2019, Kellytoy's counsel wrote to Jay At Play's counsel demanding that Jay At Play refrain from selling any goods bearing the confusingly similar MUSHMILLOWS trademark and abandon its pending application.  Defendant Jay At Play, however, refused.

57.     Kellytoy has since learned that Jay At Play not only proceeded to use the confusingly similar MUSHMILLOWS trademark but elected to use it in connection with goods incorporating the Squishmallows Trade Dress – all but ensuring confusion amongst consumers in the marketplace as to source and cheapening and otherwise damaging Kellytoy's goodwill garnered in its SQUISHMALLOWS Mark and Trade Dress.

58.     The Defendants deliberate misconduct in copying, distributing, advertising, selling, offering for sale and otherwise using the MUSHMILLOWS trademark and the Squishmallows Trade Dress in connection with the Infringing Plush – including by copying wholesale the shape and look – constitute trademark infringement and false designation of origin regarding sponsorship of those plush toys and falsely represent to the public that the Infringing Plush originate from a common source with Kellytoy's authentic Squishmallows plush toys, and/or that Defendants' Infringing Plush have been sponsored, approved or licensed by Kellytoy, or in some way affiliated or connected with Kellytoy.

59.     These activities are likely to confuse, mislead, and deceive Defendants' customers, purchasers, and members of the public as to the origin of the toys bearing the MUSHMILLOWS trademark and the Squishmallows Trade Dress, or to cause such persons to believe that Defendants' Infringing Plush and/or Defendants have been sponsored, approved, authorized, or licensed by Kellytoy or in some way affiliated or connected with Kellytoy, all in violation of, among other laws, 15 U.S.C. §§ 1114 and 1125(a).

60.     On information and belief, defendant Jay At Play and/or its agents registered the domain name <mushmillows.com> for the purpose of marketing, advertising, promoting, and otherwise offering for sale the Infringing Plush, with knowledge of Kellytoy's exclusive rights in its SQUISHMALLOWS Mark, with the intent of deceiving and confusing the public into

believing that the Infringing Plush are directly sponsored by, connected with, associated with, or originate from the same source as goods sold under the SQUISHMALLOWS Mark, with the intent of benefiting from Kellytoy's reputation and goodwill associated with this trademark, for the purpose of interfering with Kellytoy's conduct of its business and enjoyment of its exclusive rights under the SQUISHMALLOWS Mark, and for the purpose of interfering with efforts of Kellytoy to do lawful business on the Internet and elsewhere.

61.     Kellytoy is informed and believes that the Defendants' activities were conducted willfully with full knowledge of the falsity of such designations of origin and false descriptions or representations, with the intent to trade on the enormous goodwill Kellytoy has earned in its Squishmallows, including, without limitation, its SQUISHMALLOWS Mark and Squishmallows Trade Dress, and with the intent to cause confusion, and to mislead and deceive the purchasing public into believing that the products Defendants offer for sale and sell are directly sponsored by, authorized, by, associated with, or originate from Kellytoy or, at the very least, from a common source as Kellytoy's Squishmallows.

62.     Defendants, by their unauthorized infringement, copying and use of Kellytoy's SQUISHMALLOWS Mark and Squishmallows Trade Dress, have engaged and will engage in acts of trademark infringement, unfair competition, unlawful appropriation, unjust enrichment, wrongful deception of the purchasing public, and unlawful trading on Kellytoy's good will and the public acceptance of Kellytoy's original works. Defendants' activities have damaged and will continue to damage the reputation, business and good will of Kellytoy nationally and in this judicial district.

63.     Upon information and belief, unless enjoined by the Court, Defendants will continue and further escalate their infringing activities.

64.     Kellytoy has no adequate remedy at law.  Thus, these activities of Defendants have caused and, if not enjoined, will continue to cause irreparable, immediate and impending harm and damage to Kellytoy's business, and to the business, business reputation and good will of Kellytoy.

**FIRST CAUSE OF ACTION**

**(Federal Trademark Infringement – 15 U.S.C. § 1114(1)-(2))**

(Against All Defendants)

65.     Kellytoy repeats and realleges each of the allegations above as if fully set forth herein.

66.     Without Kellytoy's authorization or consent, and having knowledge of Kellytoy's prior rights in the SQUISHMALLOWS Mark, Defendants have designed, manufactured, distributed, advertised, offered for sale and sold highly similar plush toys bearing the highly similar trademark, MUSHMILLOWS, to the consuming public in direct competition with Kellytoy, in or affecting interstate commerce.

67.     Defendants have caused actual confusion, a likelihood of confusion, mistake and deception as to the source of origin, sponsorship, authorization, association, or affiliation of Defendants' goods, such that the public has been confused and there is a likelihood that the public will be confused into believing that the products Defendants promote, distribute, and sell are directly sponsored by, associated with, or originate from the same source as Kellytoy's plush toys sold in connection with the SQUISHMALLOWS Mark.

68.     Defendants' use of the SQUISHMALLOWS Mark violates sections 32(1) and (2) of the Lanham Act, 15 U.S.C. § 1114(1)-(2), because it constitutes unauthorized, willful and/or deliberate use in commerce of reproductions, counterfeits, copies, and/or colorable imitations of

Kellytoy's federally-registered mark in connection with the sale, offering for sale, distribution, and advertising of products and services in a manner likely to cause confusion, mistake, and deception.

69.     On information and belief, Defendants' acts have been willful and deliberate.

70.     As a direct and proximate result of Defendants' unlawful conduct, Defendants have misappropriated Kellytoy's rights in the SQUISHMALLOWS Mark, as well as the goodwill associated therewith, and have diverted sales and profits from Kellytoy to Defendants. Thus, as a direct and proximate result of Defendants' acts of willful infringement, Kellytoy has suffered damage to its valuable brand and reputation, and other damages in an amount to be proven at trial, including Defendants' profits and Kellytoy's lost profits.

71.     Defendants' actions described above have caused and will continue to cause irreparable damage to Kellytoy, unless Defendants are restrained by this Court.  Kellytoy has no adequate remedy at law with regard to Defendants' infringing conduct.  Accordingly, Kellytoy is entitled to a preliminary and permanent injunction, pursuant to 15 U.S.C. § 1116, restraining and enjoining Defendants' and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from using Kellytoy's SQUISHMALLOWS Mark, or any colorable imitation or variation thereof, including MUSHMILLOWS, in connection with the sale and/or marketing of any products.

72.     Defendants' aforesaid acts are exceptional within the meaning of 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

**(Trademark Infringement, Trade Dress Infringement,
False Designation of Origin and False Description -- 15 U.S.C. §1125)**

(Against All Defendants)

73.     Kellytoy repeats and realleges each and every allegation of paragraphs 1 through 66 above as if fully set forth herein.

74.     The SQUISHMALLOWS Mark and Squishmallows Trade Dress are non-functional and highly distinctive, and has each become associated in the public mind with plush toy products of the highest quality and reputation finding their origin in a single source, Kellytoy.

75.     Kellytoy owns all right, title and interest in and to the SQUISHMALLOWS Mark and Squishmallows Trade Dress.

76.     Without Kellytoy's authorization or consent, and having knowledge of Kellytoy's prior rights in the SQUISHMALLOWS Mark, Defendants have designed, manufactured, distributed, advertised, offered for sale and sold highly similar plush toys bearing the highly similar trademark, MUSHMILLOWS, to the consuming public in direct competition with Kellytoy, in or affecting interstate commerce.

77.     Without Kellytoy's authorization or consent, and having knowledge of Kellytoy's prior rights in the Squishmallows Trade Dress, Defendants have designed, manufactured, imported, distributed, advertised, offered for sale and/or sold and/or will continue to import, distribute, advertise, offer for sale, and sell replicas of the Squishmallows Trade Dress to the consuming public in direct competition with Kellytoy, in or affecting interstate commerce.

78.     The MUSHMILLOWS trademark and the Infringing Plush designs are, each alone and together, confusingly similar to the SQUISHMALLOWS Mark and the Squishmallows

Trade Dress, respectively.  Defendants' use of the MUSHMILLOWS Mark and the Squishmallows Trade Dress, both independently and cumulatively, have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the public and, additionally, injury to Kellytoy's goodwill and reputation as symbolized by the SQUISHMALLOWS Mark and the Squishmallows Trade Dress.

79.    Defendants' use and further threatened uses of the SQUISHMALLOWS Mark and the Squishmallows Trade Dress thus, both independently and cumulatively, constitute trademark infringement, trade dress infringement, false designation of origin, and/or unfair competition in violation of 15 U.S.C. § 1125(a).

80.    As a direct and proximate result of Defendants' unlawful conduct, Defendants have misappropriated Kellytoy's rights in each and both of the SQUISHMALLOWS Mark and the Squishmallows Trade Dress, as well as the goodwill associated therewith, and have diverted sales and profits from Kellytoy to Defendants. Thus, as a direct and proximate result of Defendants' acts of willful infringement, Kellytoy has suffered and/or will suffer damage to its valuable brand and reputation, and other damages in an amount to be proven at trial, including Defendants' profits and Kellytoy's lost profits.

81.    Defendants' actions described above will cause, have caused, and will continue to cause irreparable damage to Kellytoy, unless Defendants are restrained by this Court.  Kellytoy has no adequate remedy at law with regard to Defendants' infringing conduct.  Accordingly, Kellytoy is entitled to a preliminary and permanent injunction, pursuant to 15 U.S.C. § 1116, restraining and enjoining Defendants' and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, both from using the SQUISHMALLOWS

Trademark and from using the Kellytoy's Squishmallows Trade Dress, or any colorable

imitations or variations thereof, in connection with the sale and/or marketing of any products.

82.     Defendants' aforesaid acts are exceptional within the meaning of 15 U.S.C. §

1117.

## **THIRD CAUSE OF ACTION**

### **(Trademark Infringement and Dilution
and Deceptive Acts and Practices)**

(Against All Defendants)

77.     Kellytoy repeats and realleges each allegation contained in the prior paragraphs

hereto and the same are incorporated herein and made a part hereof.

78.     The foregoing acts of Defendants constitute willful, deceptive acts and

practices  in the conduct of business, trade and/or commerce, in violation of New York Gen. Bus.

Law § 349, for which Kellytoy is entitled to injunctive relief, actual damages, treble damages,

punitive damages, attorneys' fees, and costs.

79.     The foregoing acts of Defendants will create a likelihood of injury to the public

image and business reputation of Kellytoy, in that the public will likely associate Defendants'

goods with Kellytoy and/or Kellytoy's goods, and cause the dilution of the distinctive quality of

Kellytoy's SQUISHMALLOWS Mark and Squishmallows Trade Dress, in violation of New

York Gen. Bus. Law § 360-l, for which Kellytoy is entitled to injunctive  relief.

80.     The foregoing acts of Defendants were calculated and designed intentionally to

mislead and deceive the public and trade as to the identity of Defendants or as to the connection

of Defendants with Kellytoy, in violation of New York Gen. Bus. Law § 133, for which Kellytoy

is  entitled to injunctive relief.

## FOURTH CAUSE OF ACTION

### (Common Law Infringement and Unfair Competition)

(Against All Defendants)

81.     Kellytoy repeats and realleges each allegation contained in the prior paragraphs hereto and the same are incorporated herein and made a part hereof.

82.     The acts of Defendants constitute trademark infringement and unfair competition in violation of the common law of the State of New York.

83.     Upon information and belief, Defendants have intentionally appropriated Kellytoy's SQUISHMALLOWS Mark and the Squishmallows Trade Dress with the intent of causing confusion, mistake and deception as to the source of Defendants' goods, with the intent to pass-off their goods as those of Kellytoy, and the bad faith intent to take advantage of Kellytoy's reputation, good will, and efforts and expenditures, and as such, Defendants have committed unfair competition in violation of the common law of the State of New York.

84.     The foregoing acts of Defendants have created a likelihood of confusion between  Defendants and Kellytoy and/or Defendants' products and Kellytoy's Squishmallows branded products.

85.     The foregoing acts of Defendants have injured and will continue to injure Kellytoy,  by depriving it of sales of its genuine goods, by injuring its business reputation, and by passing  off Defendants' goods as Kellytoy's genuine goods, all in violation of the common law of the State  of New York.

86.     Defendants' acts have caused irreparable harm and damage to Kellytoy and have  caused Kellytoy monetary damage in an amount Kellytoy has not yet determined, for which

Kellytoy is entitled to its actual damages, Defendants' profits, punitive damages, attorneys' fees and costs.

87.      Kellytoy has no adequate remedy at law.

## FIFTH CAUSE OF ACTION

### (Misappropriation, Unfair Competition, and Unjust Enrichment Under the New York Common Law

(Against All Defendants)

88.      Kellytoy repeats and realleges each allegation contained in the prior paragraphs hereto and the same are incorporated herein and made a part hereof.

89.      Without the authorization or permission from Kellytoy, Defendants made unauthorized use of and benefit from Kellytoy's SQUISHMALLOWS Mark and the Squishmallows Trade Dress, in connection with the advertisement and offer for sale of Defendants' goods.

90.      By using Kellytoy's SQUISHMALLOWS Mark and the Squishmallows Trade Dress without Kellytoy's authorization or permission  and without incurring any costs or expending its own efforts, Defendants have misappropriated  Kellytoy's good will and reputation in Kellytoy's SQUISHMALLOWS Mark and the Squishmallows Trade Dress.

91.      By using Kellytoy's SQUISHMALLOWS Mark and the Squishmallows Trade Dress without Kellytoy's authorization or permission  and without incurring any costs or expending its own efforts, Defendants have benefitted from  Kellytoy's expenditures and efforts.

92.      By using Kellytoy's SQUISHMALLOWS Mark and the Squishmallows Trade Dress without Kellytoy's authorization or permission  and without incurring any costs or expending its own efforts, Defendants have been unjustly enriched.

93.      By using Kellytoy's Kellytoy's SQUISHMALLOWS Mark and the Squishmallows Trade Dress without Kellytoy's authorization or permission and without incurring any costs or expending its own efforts, Defendants have unfairly competed with Kellytoy.

94.      Upon information and belief, Defendants have intentionally appropriated Kellytoy's SQUISHMALLOWS Mark and the Squishmallows Trade Dress with the intent of causing confusion, mistake and deception as to the source of Defendants' goods, with the intent to pass-off their goods as those of Kellytoy, and with the bad faith intent to take advantage of Kellytoy's reputation, good will, and efforts and expenditures.

95.      The foregoing acts of Defendants have created a likelihood of confusion between Defendants and Kellytoy and/or Defendants' products and Kellytoy's Squishmallows products.

96.      The foregoing acts of Defendants have injured and will continue to injure Kellytoy, by depriving it of sales of its genuine goods, by injuring its business reputation, and by passing off Defendants' goods as Kellytoy's genuine goods, all in violation of the common law of the State of New York.

97.      Defendants' acts have caused irreparable harm and damage to Kellytoy and have caused Kellytoy monetary damage in an amount Kellytoy has not yet determined, for which Kellytoy is entitled to its actual damages, Defendants' profits, punitive damages, attorneys' fees and costs.

98.      Kellytoy has no adequate remedy at law.

## SIXTH CAUSE OF ACTION

## (Cyber-piracy under 15 U.S.C. § 1125(d))

(Against All Defendants)

99.      Kellytoy repeats and realleges each allegation contained in the prior paragraphs hereto and the same are incorporated herein and made a part hereof.

83.      Kellytoy's SQUISHMALLOWS Mark is and was a distinctive mark at the time the Defendants registered and began controlling the domain name <mushmillows.com>.

84.      The domain name <mushmillows.com> is confusingly similar to Kellytoy's SQUISHMALLOWS Mark, especially in light of the high similarity of the parties' respective goods.

85.      On information and believes, Defendants chose the domain name <mushmillows.com> with a bad faith intent to profit from Kellytoy's reputation in its SQUISHMALLOWS Mark.

86.      Defendants' use and registration of the domain name <mushmillows.com> violates 15 U.S.C. § 1125(d).

87.      Defendants' conduct is causing irreparable damage to Kellytoy for which there is no adequate remedy at law, such that the Court should order the forfeiture or cancellation of the domain name or the transfer thereof to Kellytoy.

88.      As a direct and proximate result of Defendants' conduct, Kellytoy has suffered damages to the valuable SQUISHMALLOWS Mark, such that the Court should award statutory damages in the amount of not less than $100,000, as provided for under 15 U.S.C. § 1117(d).

## JURY DEMAND

Kellytoy demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Kellytoy prays for judgment against Defendants as follows:

1.     That Defendants, their officers, members, directors, agents, servants, employees, successors, licensees, representatives, successors, assigns, and all persons acting in concert or participation with them, be permanently enjoined and restrained from:

    (i)     Manufacturing, importing, distributing, advertising, offering to sell or selling the Infringing Plush or any colorable imitations of the SQUISHMALLOWS Mark or the Squishmallows Trade Dress;

    (ii)     Using the Squishmallows Trade Dress or any confusingly similar trade dress in connection with plush or other toys;

    (iii)     Using the SQUISHMALLOWS Mark or any confusingly similar mark, including without limitation MUSHMILLOWS, in connection with plush toys or other goods;

    (iii)     Using the Squishmallows Trade Dress, or any confusingly similar mark, in connection with the advertisement, offer to sell or sale of any toy products;

    (iv)     Using the SQUISHMALLOWS Mark or any confusingly similar mark, including without limitation MUSHMILLOWS, in connection with the advertisement, offer to sell or sale of any products;

    (v)     Using any false designation of origin, or representing or suggesting directly or by implication that Defendants, or any brands or other sources identifiers used by Defendants, or their toys, are affiliated with, associated

with, authorized by, or otherwise connected to Kellytoy, or that

Defendants are authorized by Kellytoy to use the SQUISHMALLOWS

Mark or the Squishmallows Trade Dress;

(vi)    Using, trafficking in, or transferring to any entity other than Kellytoy, or

encumbering, or maintaining ownership of the domain name

<mushmillows.com>, or undertaking any activities to promote or utilize

that domain name, or any other domain name that includes any word or

designation confusingly similar to SQUISHMALLOWS, including

without limitation, MUSHMILLOWS, or any alternate spellings thereof;

(vii)   Infringing or contributing to the infringement of any of Kellytoy's

trademarks or trade names, including without limitation the

SQUISHMALLOW Mark and/or Squishmallows Trade Dress, or otherwise

engaging in unfair competition with Kellytoy in any manner or engaging in

any conduct tending to falsely represent or likely to confuse, mislead or

deceive suppliers, purchasers, or any member of the public into thinking

that Defendants or any of their products are affiliated with Kellytoy or that

Kellytoy has otherwise sponsored, approved, or licensed any products or

services of Defendants;

(viii)  Engaging in any other activity constituting unfair competition with

Kellytoy, or constituting infringement of the SQUISHMALLOWS Mark

or the Squishmallows Trade Dress; and

(ix)    Assisting, aiding, or abetting any other person or business entity in

engaging or performing any of the activities referred to in subparagraphs

(i) through (vii) above, or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (vii) above;

2.     That Defendants be directed to file with the Court and serve on Kellytoy, within thirty (30) days after entry of a final injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

3.     That Kellytoy has superior rights to exclusive use in the SQUISHMALLOWS Mark and Squishmallows Trade Dress in connection with toys and/or pillows;

4.     That Defendants shall not in the future file or maintain an application for registration or registration of any mark that includes "squishmallows" or "mushmillows," or either the word "squish," "millows," or "mallows" or any designation(s) confusingly similar thereto with the United States Patent and Trademark Office or any other governmental or state authority;

5.     That the Court direct any third parties providing services to Defendants in connection with any infringing and/or enjoined conduct, including social media platforms (*e.g.*, Instagram, Facebook, Twitter), online marketplaces (*e.g.*, Alibaba, eBay, Etsy, AliExpress, Amazon, Taobao), online payment providers, including credit card companies (*e.g.*, PayPal, Visa) and other service providers (*e.g.*, Google, GoDaddy, LiveChat, Shopify) to cease providing services to Defendants in connection with the offer for sale and sale of the Infringing Plush or any other products using or embodying the SQUISHMALLOWS Mark, the Squishmallows Trade Dress, or any design, word or designation confusingly similar to the

SQUISHMALLOWS Mark and/or the Squishmallows Trade Dress, including without limitation, MUSHMILLOWS, or any alternate spellings thereof;

6.      That Defendants be required to pay Kellytoy such damages as it has sustained as a consequence of Defendants' infringement of the of each of the Squishmallows Trade Dress and the SQUISHMALLOWS Mark and trebling of those damages under 15 U.S.C. § 1117;

7.      That the Court enter an order requiring Defendants to either cancel their registration, or transfer the ownership of such registration to Kellytoy, of the domain name <mushmillows.com>, or any other domain name that includes the term "mushmillows," or any word or designation confusingly similar to SQUISHMALLOWS, including without limitation, alternate spellings;

8.      That Defendants have no right or authority to issue, grant, register, license, or otherwise authorize the use of <mushmillows> as an Internet domain name, and no right to use, copy, reproduce, or display Kellytoy's SQUISHMALLOWS Mark, or confusingly similar marks, including, without limitation, MUSHMILLOWS, on the Internet in connection with selling, advertising, or promoting any products/services without Kellytoy's consent;

9.      Adjudge that each of the Defendants, by their unauthorized use of Kellytoy's SQUISHMALLOWS Mark and the Squishmallows Trade Dress for plush toys, and such other acts as it may have undertaken relating to the SQUISHMALLOWS Mark and/or Squishmallows Trade Dress, have violated Kellytoy's rights under 15 U.S.C. §§ 1114, 1125(a) and 1125(d), under New York state law, and under common law, and that they have done so willfully and for the purpose of violating Kellytoy's rights and damaging Kellytoy's goodwill and reputation in the SQUISHMALLOWS Mark and the Squishmallows Trade Dress;

10.    Direct Defendants to provide Kellytoy with an identification in writing of any and all entities that are presently using the SQUISHMALLOWS Mark or the Squishmallows Trade Dress in the United States on Defendants' behalf and inform them that they must immediately cease such use;

11.    Direct Defendants to immediately recall any and all merchandise previously provided to any United States entity bearing or using the SQUISHMALLOWS Mark (including, e.g., the MUSHMILLOWS Mark), or the Squishmallows Trade Dress;

12.    Enter an order, pursuant to 15 U.S.C. § 1118, directing Defendants to deliver for destruction all products, brochures, marketing materials, decals, stickers, signs, prints, packages, receptacles, wrappers, boxes, and advertisements in their possession or under their control, bearing any unauthorized copy of any of the SQUISHMALLOWS Mark or the Squishmallows Trade Dress, or any simulation, reproduction, counterfeit, copy, confusingly similar likeness, or colorable imitation thereof, including without limitation the MUSHMILLOWS designation, and all plates, molds, matrices, programs and other means of making same;

13.    That each Defendant provide Kellytoy in writing with the following information relating to Defendants' goods marketed, advertised, offered for sale, or sold under either or both of the SQUISHMALLOWS Mark and/or the Squishmallows Trade Dress:

> (i)    the name, address and telephone number of each and every United States entity to whom Defendants have made available or otherwise provided any such products; and
>
> (ii)    the total number of units distributed and sold;
>
> (iii)    the total number of units remaining in inventory; and

        (iv)     a full accounting as to the precise dollar amount of such products made available or provided and the profits recognized by Defendants in connection with such actions;

14.     That Kellytoy be awarded statutory damages in the amount of not less than $100,000, under 15 U.S.C. § 1117(d);

15.     Direct Defendants to pay the costs of corrective advertising;

16.     Direct Defendants to pay Plaintiff's attorneys' fees and costs incurred in initiating and prosecuting this action;

17.     Direct Defendants to pay punitive damages and exemplary damages according to proof;

18.     That Kellytoy recover its actual damages, Kellytoy's lost profits, and Defendant's profits arising from Defendants' conduct complained-of herein;

19.     That the Court award enhanced profits and treble damages;

20.     That Kellytoy be awarded interest, including pre-judgment interest, on the foregoing sums;

21.     That the Court direct such other actions as the Court may deem just and proper to prevent the public from deriving the mistaken impression that any products or services offered, advertised, or promoted by or on behalf of Defendants are authorized by Kellytoy or related in any way to Kellytoy's products or services;

22.     Providing that Defendants' conduct constitutes willful, deceptive acts and practices in the conduct of business, trade and/or commerce, in violation of New York Gen. Bus. Law § 349;

23.    Providing that Defendants' conduct will create a likelihood of dilution and injury to Kellytoy's business reputation in violation of New York Gen. Bus. Law §§ 360-l;

24.    Providing that Defendants used Kellytoy's SQUISHMALLOWS Mark and/or Kellytoy's Squishmallows Trade Dress with the intent to cause confusion and to deceive the public in violation of New York Gen. Bus. Law § 133;

25.    Providing that Defendants have injured Kellytoy by depriving it of sales of its genuine goods and services, by injuring its business reputation, and by passing off Defendants' goods as Kellytoy's goods and/or created a likelihood of confusion and/or false designation of origin, all in violation of the common law of the State of New York;

26.    Providing that Defendants' willfully misappropriated and used the SQUISHMALLOWS Mark and/or Squishmallows Trade Dress and such conduct constitutes misappropriation, unfair competition and unjust enrichment, all in violation of the common law of the State of New York;

27.    For such other and further relief as the Court may deem just and proper.


Dated:  January 22, 2020                     Respectfully submitted:
           Scarsdale, New York

                                             **LACKENBACH SIEGEL, LLP**

                                             By: /s/ Robert B. Golden
                                                 Robert B. Golden *(RG-6157)*
                                                 Jeffrey M. Rollings *(JR-6940)*
                                                 One Chase Road
                                                 Lackenbach Siegel Building
                                                 Scarsdale, New York 10583
                                                 914-723-4300
                                                 914-723-4301 fax
                                                 rgolden@LSLLP.com
                                                 jrollings@LSLLP.com
                                                 Local Counsel for Plaintiffs

FREEMAN, FREEMAN & SMILEY, LLP


_____

TODD M. LANDER
MARK B. MIZRAHI
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Attorneys for Plaintiff,
KELLYTOY WORLDWIDE, INC.